UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ELNITA RANK,<br><br>Defendant. | 3:18-CR-30013(02)-RAL<br><br>REPORT AND RECOMMENDATION FOR DISPOSITON OF MOTION TO SUPPRESS STATEMENTS |

Elnita Rank is charged with conspiring to retaliate against a witness. She seeks to suppress statements she made to federal investigators on voluntariness grounds. Because her statements were lawfully obtained under the Fifth Amendment, the Court recommends that the suppression motion be denied.

## BACKGROUND

Sometime in the middle of the morning, on October 19, 2017, James Flanigan, an investigative agent for the United States Attorney's Office, and Tom Wilberg, an FBI special agent, interviewed Rank in her home, located about two miles northwest of Fort Thompson, South Dakota on the Crow Creek Indian Reservation. An older unidentified man greeted the agents at the front door and invited them in. He then escorted the agents to a kitchen/dining room table where Rank was sitting. The two identified themselves and asked if they could speak to her. The man inquired whether it was all

right for him to leave. Rank said yes and, after excusing himself, departed from the residence.

The agents advised Rank of what they wanted to talk to her about. Agent Wilberg informed her that she was not in trouble at that time for anything, that she would not be arrested at the end of the interview, and that if she wanted to stop or postpone the interview or excuse herself to use the restroom or for any other reason, she should let the agents know and they would respect her wishes. Rank refused to consent to the interview being recorded and asked whether she needed an attorney. The agents told her that it was her decision whether to have one – and not something they could weigh in on.

Rank continued to talk and the agents proceeded with the interview. Once or twice more Rank asked whether she needed to have an attorney. The agents responded as they did before – that it was up to her.

Rank answered the agents' questions and provided information relevant to their investigation. At some point, Rank said that she wanted to have an attorney present for any further questioning and requested the agents to leave so that she could watch her television shows. The agents thanked her for her time and left the residence.

Ultimately, Rank was indicted and charged with conspiracy to retaliate against a witness.[1] After pleading not guilty to the charge, she moved to suppress the statements

---

[1] *See* 18 U.S. C. §§1513(e) and (f).

2

she made to the agents on voluntariness grounds. The Court held an evidentiary hearing on the motion at which two witnesses (the agents) testified.

## DISCUSSION

Rank contends that her statements to Agents Flanigan and Wilberg were involuntary and taken in violation of the Fifth Amendment. She argues that her age, the lack of any *Griffin*-type warnings[2], and other factors thwarted her ability to make autonomous statements.

Involuntary statements are inadmissible at trial for any purpose.[3] Statements are involuntary if they are "the product of an essentially free and unconstrained choice by [their] maker."[4] Conversely, statements are involuntary when they are "extracted by threats, violence or express or implied promises sufficient to overbear [the suspect's] will and critically impair [her] capacity for self-determination."[5]

---

[2]*See United States v. Griffin*, 922 F.2d 1343, 1349-50 (8th Cir. 1990).

[3]*See Michigan v. Harvey*, 494 U.S. 344, 351 (1990); *see also Schneckloth v. Bustamonte*, 412 U.S. 218, 225-26 (1973) (a voluntary confession may be used against a suspect but an involuntary one offends due process).

[4]*Schneckloth*, 412 U.S. at 225.

[5]*United States v. LeBrun*, 363 F.3d 715, 724 (8th Cir. 2004) (*en banc*), *cert. denied*, 543 U.S. 1145 (2005).

The totality of the circumstances must be considered when determining whether statements are voluntary,[6] with the focus being on the conduct of the agents and the characteristics of the suspect.[7] The Government bears the burden of persuasion and must prove, by a preponderance of the evidence, that the challenged statements were voluntary.[8]

In looking at the agents' behavior during and as part of questioning, courts consider the length of interview;[9] its continuous nature;[10] its location;[11] the use of force;[12] threats or promises;[13] and misrepresentations.[14] When determining a suspect's ability to resist pressure, courts take into account the suspect's age, years of formal education,

---

[6] See Arizona v. Fulminante, 499 U.S. 279, 285-86 (1991); LeBrun, 363 F.3d at 727.

[7] See LeBrun, 363 F.3d at 724.

[8] See id.

[9] See Spano v. New York, 360 U.S. 315, 322 (1959).

[10] See Leyra v. Denno, 347 U.S. 556, 561 (1954).

[11] See Reck v. Pate, 367 U.S. 433, 441 (1961).

[12] See Beecher v. Alabama, 389 U.S. 35, 36 (1967).

[13] See Fulminante, 499 U.S. at 287-88; Lynumn v. Illinois, 372 U.S. 528, 534 (1963); Rogers v. Richmond, 365 U.S. 534, 535-36 (1961).

[14] See Frazier v. Cupp, 394 U.S. 731, 739 (1969); see generally, 2 Wayne R. LaFave, Jerold H. Israel, Nancy J. King & Orin S. Kerr, Criminal Procedure, §6.2(c) nn. 62-170 (4th ed. 2015 & Dec. 2017 update) (discussing the relevant factors in the police conduct facet of the totality of the circumstances analysis).

physical, and mental condition, intelligence level, and experience with law enforcement.[15]

In those cases where only one factor was found to be present, the Supreme Court, and Eighth Circuit have consistently held that a suspect's statements were voluntary.[16] Thus, for statements to be involuntary, two factors must work in tandem. There must be (1) police coercion or overreaching to the extent that the suspect's will was overborne and (2) evidence that the suspect was susceptible to having her will prevailed upon.[17]

There is no proof – worthy of belief – that Rank was coerced into making any statements against her will. She agreed to talk with Agents Flanigan and Wilberg, had a

---

[15] See *Yarborough v. Alvarado*, 541 U.S. 652, 668 (2004), *Fulminante*, 499 U.S. at 286 n.2; see also *LeBrun*, 363 F.3d at 726 (one of the key concerns in judging whether a confession is involuntary is the intelligence, mental state, or any other factors possessed by the suspect that might make her particularly suggestible and susceptible to having her will overborne); see generally 2 Criminal Procedure, §6.2(c) nn. 171-85 (canvassing the salient determinants in the personal characteristics portion of the totality of the circumstances examination).

[16] See e.g. *Colorado v. Connelly*, 479 U.S. 157 (1986) (severe mental illness but no evidence of police coercion or overreaching); *LeBrun*, 363 F.3d 715 (although there was ample evidence of police overreaching, the suspect did not have a particularly susceptible nature or sensibility); *United States v. Astello*, 241 F.3d 965 (8th Cir.) (same), cert. denied, 533 U.S. 962 (2001) ; *United States v. Makes Room For Them*, 49 F.3d 410 (8th Cir. 1995) (no police coercion even though the suspect had a diminished capacity to resist pressure); see generally 2 Criminal Procedure §6.2(c) nn. 186-92 (*citing Connelly* and pointing out that the suspect's characteristics can never alone dispose of the inquiry into constitutional voluntariness – there must also exist "the crucial element of police overreaching")

[17] See *United States v. Klynsma*, No. CR. 08-50145-RHB, 2009 WL 3147790 at *31 (D.S.D. Sept. 29, 2009).

cordial, adult-like conversation with them for 30 to 45 minutes before she terminated the dialogue. Agent Wilberg told Rank that she (1) was not in trouble, (2) would not be arrested when the interview was over, and (3) could adjourn or suspend the interview whenever she wanted.[18] At no time did the agents raise their voices, threaten, intimidate or make any promises or misrepresentations to her. Nor did they use any force, lay hands on Rank, brandish a weapon, or restrain her in any way.

Despite her age (80 years old), Rank did not appear to be low functioning or particularly suggestible or vulnerable to questioning by authority figures. She was coherent, made eye contact and responded to questions appropriately with no difficulty. She exhibited no signs of being sleepy, intoxicated, in pain, or of any changes in emotion or demeanor during the interview. Significantly, Rank's unwillingness, after pointed inquiries, to answer any more questions without an attorney present, and request for the agents to leave (1) repudiates any notion that she suffered from a cognitive or age-related infirmity, and (2) establishes that she was well aware of her legal rights and knew how to exercise them.

The record as a whole shows that Rank's statements were voluntary. They were ones she wanted to make and were not the product of an environment and questioning that was so coercive it overwhelmed her faculties and shoehorned her decision making

---

[18] *See United States v. Running*, 698 F.Supp.2d 1186, 1192 (D.S.D. 2009) ("The FBI routinely informs suspects of their '*Griffin* rights' as a matter of course.").

capacity.[19] This being the case, Rank's voluntariness claim – based on the Fifth Amendment – cannot succeed and the statements she made to the agents may be used against her as substantive evidence at trial.

## CONCLUSION

Rank's statements to Agents Flanigan and Wilberg in her home were voluntary and made in compliance with the Fifth Amendment. The agents did not engage in any overreaching or impermissibly sway her into admitting to something against her will. And even at 80 years, she had the wherewithal and was scrupulous enough to invoke her right to an attorney, stop the questioning and make the agents leave. Because her statements were obtained in compliance with the edicts of the Fifth Amendment, they are freely admissible as trial evidence.

## RECOMMENDATION

For the reasons, and based on the authorities discussed and cited herein, it is hereby

RECOMMENDED that Rank's Motion to Suppress Statements[20] be denied in its entirety.

---

[19] *See United States v. Evers*, No. 17-1826, 2018 WL 1940532 at *2 (8th Cir. April 25, 2018); *United States v. Thunderhawk*, 799 F.3d 1203, 1206 (8th Cir. 2015); *United States v. Betone*, 686 F.Supp.2d 949, 954-55 (D.S.D. 2010).

[20] *See* Dkt. No. 88.

## NOTICE

The parties have 14 calendar days after service of this report and recommendation to file their objections to the same.[21] Unless an extension of time for cause is later obtained,[22] failure to file timely objections will result in the waiver of the right to appeal questions of fact.[23] Objections must "identify[] those issues on which further review is desired[.]"[24]

DATED this 17th day of May, 2018, at Pierre, South Dakota.

BY THE COURT:

*[signature]*

MARK A. MORENO
UNITED STATES MAGISTRATE JUDGE

---

[21] *See* 28 U.S.C. §636(b)(1); Fed. R. Crim. P. 59(b).

[22] *See Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990); *Nash v. Black*, 781 F.2d 665, 667 & n.3 (8th Cir. 1986) (citing *Thomas v. Arn*, 474 U.S. 140, 155 (1985)).

[23] *See Thompson*, 897 F.2d at 357; *Nash*, 781 at 667.

[24] *Arn*, 474 U.S. at 155.